**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S25G0768
Jahsiah Lee
v.
The State

On Writ of Certiorari from the Court of Appeals of Georgia
No. 20SC177024

Argued: January 20, 2026 — Decided: May 19, 2026

PINSON, Justice.

The Street Gang Terrorism and Prevention Act makes it a crime for "any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of" certain crimes. OCGA § 16-15-4(a). This provision does not make it a crime merely to commit one of those specified crimes while being a member of a gang. Instead, it requires the State to prove a so-called "nexus" between the defendant's crime and the gang — that is, that the defendant committed one of those crimes with the intent to further the criminal purposes of the gang. See *Rodriguez v. State*, 284 Ga. 803, 807 (2009).

We granted review in this case to consider whether it is error for a trial court to instruct a jury that this nexus element can be met merely by proof that the defendant's crime was the "type" or "sort" of crime that members of the gang commit, as the trial court's instruction below told the jury (and as the suggested pattern instruction indicates). We now conclude that such an instruction does not correctly state the law. As we explain below, to

find the nexus element met, a jury must find that the defendant committed the crime at issue with the intent to further the criminal purposes of the gang. In a given case, that ultimate finding might well be inferred from evidence that the defendant committed the same "type" or "sort" of crime that members of the gang commit. But such evidence is not, by itself, conclusive proof that the defendant committed his crime with the intent to further the gang's criminal purposes. So a jury instruction that tells the jury that the nexus element *is* proved by evidence that the defendant committed the "type" or "sort" of crime that the gang commits, without more, is not a correct statement of the law. Because that was the import of the challenged instruction here, even viewed in the context of the jury instructions as a whole, the judgment below is vacated, and the case is remanded for further proceedings consistent with this opinion.

1.  *Background*

Jahsiah Lee was charged with several crimes in connection with an armed robbery. One of those charged crimes was participation in criminal gang activity in violation of OCGA § 16-15-4, which makes it a crime for "any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of" offenses listed in a neighboring statute, OCGA § 16-15-3(1). At trial, the trial court instructed the jury that to prove Lee was guilty of this offense, the State had to prove (among other things) "that there is a nexus or connection between the crimes that were committed and the gang. That is the crime was committed to further the interest of the gang or that the crime committed is the type of crime that members of the alleged gang are known to commit." This instruction was a slightly revised version of the suggested pattern instruction, which says "the State must prove that there is a nexus

2

between the crime committed and the gang, that the crime was committed to further the interests of the gang; meaning proof that the crime committed was the sort of crime that the gang does." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.02.25 (4th ed. 2024). The jury found Lee guilty of participating in criminal gang activity and several other crimes, and he was sentenced to twenty years in prison and five years of probation.

On appeal to the Court of Appeals, Lee claimed that the trial court's instruction on the "nexus" requirement was error. He pointed out that the instruction told the jury that the State could prove the required nexus between his crimes and the gang by showing only that the crime was the type of crime that members of the gang are known to commit — rather than making clear that the State must prove that the defendant committed the crime with the intent to further the gang's interests. The Court of Appeals rejected this argument, concluding that the instructions considered "as a whole" explained that "a showing that Lee's crime was the type of crime that members of his gang are known to commit meant that he acted with the intent to further his gang's interests." *Lee v. State*, 374 Ga. App. 329, 338 (2025).

We granted review to consider whether, for purposes of proving that a defendant committed the offense of participation in criminal street gang activity, the State has proved that a defendant committed a crime to further the gang's interests by proving merely that the crime was the "sort" or "type" that the gang commits.

2. *Analysis*

(a) The Street Gang Terrorism and Prevention Act makes it a crime for "any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity

3

through the commission of any offense" listed in OCGA § 16-15-3.[1] OCGA § 16-15-4(a). This provision does not make it a crime merely to commit one of the listed offenses while being a member of a gang. See *In Interest of W.B.*, 342 Ga. App. 277, 282–83 (2017). Instead, as we explained in *Rodriguez*, 284 Ga. at 807, the statute makes it a crime to conduct or participate in *the gang's* criminal activities. See id. at 807–08 (explaining that this provision's language that focuses on participating in "criminal gang activity *through*" committing a listed offense "is most naturally read to require that the defendant conducted or participated in the criminal gang activity of the criminal street gang with which he was associated"). The upshot of this requirement is that the State must prove that the defendant committed one of the listed offenses with the intent to further the criminal purposes of the gang. See id. See also *Boyd v. State*, 306 Ga. 204, 210–11 (2019) ("The State must prove that the commission of the predicate act was intended to further the interests of the gang." (cleaned up)); *Jones v. State*, 292 Ga. 656, 660 (2013) (reversing defendant's conviction under the Gang Act because there was no evidence to prove that defendant was associated with a gang or "that his commission of an aggravated assault related in any way to the activities" of the gang). This required connection between the defendant's conduct and the gang is often called the "nexus" element of the offense. See, e.g., *Rodriguez*, 284 Ga. at 807; *Jackson v. State*, 321 Ga. 659, 664–65 (2025); *Boyd*, 306 Ga. at 211.

Our decisions make clear that this ultimate finding — that

---

[1] The statute defines "criminal gang activity" as "the commission, attempted commission, conspiracy to commit, or the solicitation, coercion, or intimidation of another person to commit any of" the offenses on that list. See OCGA § 16-15-3(1).

the defendant acted with the intent to further the criminal purposes of the gang — may be inferred from evidence of the defendant's association with the gang and his participation in the gang's activities before and during the crimes charged. See *Dunn v. State*, 312 Ga. 471, 474 (2021) (citing *Hayes v. State*, 298 Ga. 339, 343 (2016)). And the evidence in support of that finding may take a variety of forms. For example, the State might introduce evidence that the defendant committed the offense in question to "assist other gang members" in "getting revenge for perceived disrespect" from a rival gang, *Dunn*, 312 Ga at 474–75, bring in money for the gang or establish a "place of business" for its drug dealing, *Stripling v. State*, 304 Ga. 131, 134 (2018), defend the gang's territory, see *Upshaw v. State*, 323 Ga. 257, 266 (2026), enhance the gang's status, see *Sillah v. State*, 315 Ga. 741, 746 (2023), or "resolve an internal gang dispute," *Blocker v. State*, 316 Ga. 568, 576 (2023).

But in all events, to find a defendant guilty of participating in criminal gang activity under OCGA § 16-15-4, a jury must make the ultimate finding that the defendant committed the offense with the intent to further the criminal purposes of the gang. And when the evidence is not sufficient to support that ultimate finding, a conviction for participation in criminal gang activity under OCGA § 16-15-4 cannot stand. See *Jones*, 292 Ga. at 659–60; *Kelly v. State*, 348 Ga. App. 619, 624 (2019); *In Interest of W.B.*, 342 Ga. App. at 281–83; *Randolph v. State*, 334 Ga. App. 475, 481–82 (2015).

This proper understanding of the nexus element of OCGA § 16-15-4 is not reflected in the jury instructions at issue. The instruction here told the jury that the State could prove the nexus element by proving that "the crime was committed to further the interest of the gang *or* that the crime committed is the

5

type of crime that members of the alleged gang are known to commit." And the pattern instruction from which the instruction here was drawn tells a jury that the required nexus element "mean[s]" that the State needs "proof that the crime committed was the sort of crime that the gang does." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.02.25 (4th ed. 2024). In other words, in slightly different ways, both the instruction given here and the pattern instruction tell the jury that the nexus element of this offense may be met if it finds that the defendant's crime was the "type" or "sort" of crime that the gang or its members commits. But a finding to that effect is not the same thing as the ultimate (and required) finding that the defendant committed the crime with the intent to further the criminal purposes of the gang. A jury might be able to *infer* that ultimate finding in a given case from evidence that the defendant's crime was the type of crime the gang commits, at least where some evidence connects the commission of that type of crime to specific criminal purposes of the gang. If, for instance, a gang funds its operations through armed robberies of drug dealers, then a jury might infer from evidence that the defendant committed an armed robbery of a drug dealer that the defendant did so with the intent to further the criminal purposes of the gang. See *Stripling*, 304 Ga. at 134–35 (explaining that the evidence was sufficient to establish a nexus when a gang expert testified that the defendants' "gang makes most of its money through armed robberies, including robberies of drug dealers," and the victim, a drug dealer, died when defendants shot him during an attempted armed robbery). See also, e.g., *Pierce v. State*, 319 Ga. 846, 852 (2024) (explaining that defendant's gang was known to commit armed robberies of "johns" for members to use the proceeds to pay their monthly gang dues so a jury could find that defendant's aggravated assault with a deadly weapon of the victim, a "john," while robbing him was intended to further

6

the gang's interests); *Butler v. State*, 310 Ga. 892, 897 (2021) (explaining that the defendant shot the victim with an intent to further the gang's interests because "there was evidence that the gang used prostitution and robbery of 'johns' to finance the gang and that the shootings resulted from that sort of activity"). But in a different case, there might not be any evidence that the kinds of crimes members of a gang commit have anything to do with the gang's criminal purposes. Or there might be evidence that, although the gang commits certain kinds of crimes to further its criminal purposes, the defendant's particular crime was for personal gain, and not connected to the gang's crimes. Cf. *Overstreet v. State*, 312 Ga. 565, 574 (2021) (stating that defendant's statement that he wanted to rob someone because he needed money could be construed as establishing a personal motive for the armed robbery instead of a gang-related motive, but "that issue was for the jury to resolve" and other evidence supported that defendant had a gang-related motive); *In Interest of W.B.*, 342 Ga. App. at 281–83 (concluding that the evidence of a nexus between the crime and the gang was not sufficient where no witnesses were aware that the crime was committed by members of a gang, there was no evidence that the items were stolen for anything other than personal use, and neither defendant nor other gang members posted anything about the burglary on social media); *Randolph*, 334 Ga. App. at 481–82 (concluding that a defendant-gang member distributing small quantities of marijuana for personal use did not benefit his gang "as an entity"). The point is that evidence that the defendant committed the same "type" of crime that the gang does is not, by itself, conclusive proof that the defendant committed his crime with the intent to further the gang's criminal purposes. At most, that ultimate finding might (but need not) be inferred from such evidence in combination with other ev-

7

idence that ties the types of crimes that members of the gang commit to the gang's criminal purposes. So a jury instruction that tells the jury that the nexus element is proved by evidence that the defendant committed the "type" or "sort" of crime that the gang commits, without more, is not a correct statement of the law. The touchstone for the nexus element remains proof that the crime was committed with the intent to further the criminal purposes of the gang, and a jury instruction that allows a jury to find a defendant guilty of participation in criminal street gang activity without making that ultimate finding is error.

(b) The Court of Appeals reasoned below that the trial court's instructions here, "considered as a whole," "did not authorize the jury to find Lee guilty simply because he committed a category of crime that members of his gang are known to commit." *Lee*, 374 Ga. App. at 338. But the challenged instructions did just that. They told the jury that the State had to prove a "nexus or connection between the crimes that were committed and the gang," and they went on to explain that such a "nexus or connection" meant "the crime was committed to further the interest of the gang *or* that the crime committed is the type of crime that members of the alleged gang are known to commit." The emphasized "or" is the culprit. By putting these two descriptions of the nexus element in the disjunctive, the instructions told the jury that one or the other was sufficient to prove the nexus element. That was wrong twice over. That is, the instruction relayed not only that the nexus element could be established merely with proof that the defendant's crime was "the type of crime that members of the alleged gang are known to commit," but also that the nexus element could be established *without* proof that the defendant committed the crime to further the gang's interests. As we just explained, neither statement is legally correct. Proof that the

8

crime was the "type" of crime the gang commits does not necessarily establish the required nexus, and that element always requires an ultimate finding that the defendant committed the crime with the intent to further the gang's criminal purposes.[2]

The Court of Appeals also suggested that the language of the indictment, which the trial court read to the jury, mitigated the instructional error. See *Lee*, 374 Ga. App. at 338. But we see nothing in the indictment, which merely recites the statutory language and alleges the specific crimes that Lee committed, that would make clear to the jury that the State must prove that Lee committed the alleged crimes with the intent to further the gang's criminal purposes — much less anything that would authorize the jury to disregard the court's express instructions that would allow the jury to find the nexus element met without making the required finding that Lee acted with the intent to further the criminal purposes of the gang.

Finally, the Court of Appeals noted that the State's expert witness explained the nexus element in his testimony. See id. at 339. But expert testimony cannot stand in for (much less override) a court's jury instructions in this way. As the trial court told the jury here, it is the court's responsibility to identify the law that applies to a given case, and the jury is bound to follow the court's instructions on the law, not witness testimony that happens to discuss the law. See *Lee v. State*, 306 Ga. 663, 666 (2019)

---

[2] The suggested pattern charge makes a similar mistake in a slightly different way. Rather than explaining that the nexus element may be established by proof that the crime was the type of crime the gang commits, the pattern charge simply instructs the jury that the nexus element "mean[s]" that. Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.02.25 (4th ed. 2024). Such a charge still wrongly equates proof that the crime was the "sort" of crime the gang does with proof that the defendant committed the crime with the intent to further the gang's criminal purposes.

(stating that the trial court "clearly signal[ed] to the jury that it was not to take the applicable law from witnesses" when "at the beginning of its jury instructions, the trial court clarified that *the court* had the 'duty and responsibility to determine the law that applies to this case and to instruct [the jurors] on that law'"). And because the jury is "presumed to follow the trial court's instructions," *Thompson v. State*, 308 Ga. 854, 860 (2020), we presume that the jury followed the trial court's instructions about the nexus element, not any witness's testimony. So the testimony of the State's expert witness did not "cure" the instructional error either.

(c) In light of our conclusion that the challenged instructions did not correctly state the law with respect to the nexus element of OCGA § 16-15-4, the judgment of the Court of Appeals is vacated. Any arguments about whether that error was harmless — a question outside the scope of the question we asked in granting review — are left for remand.

*Judgment vacated and case remanded. All the Justices concur, except Warren, P.J., not participating, and Land, J., disqualified.*